UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| STACEY EILEEN MORA<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No.: 2:17-cv-00326-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Stacey Eileen Mora's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.[2] *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. <u>ADMINISTRATIVE PROCEEDINGS</u>

On July 10, 2013, Petitioner Stacey Eileen Mora ("Petitioner") applied for Title II disability and disability insurance benefits. (AR 20.) Petitioner alleged disability beginning September 1, 2009. (*Id.*) Her claim was denied initially on September 4, 2013 and then again on reconsideration on September 19, 2013. (*Id.*) On September 23, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and

---

[1] The pleading was titled and framed as a complaint, but it is more properly treated as a petition for review, as it seeks review of a final agency action.

[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

MEMORANDUM DECISION AND ORDER – 1

testified at a hearing held on August 27, 2015 in Spokane, Washington. (*Id.*) Impartial medical experts R. Thomas McKnight, Ph.D., and Wil Nelp, M.D., appeared and testified at that hearing. (*Id.*) Petitioner subsequently appeared and testified at a second hearing held on January 13, 2016, also in Spokane, Washington. (*Id.*) Impartial vocational expert K. Diane Kramer appeared and testified at this second hearing. (*Id.*)

On February 17, 2016, ALJ Marie Palachuk issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her alleged onset date through the date last insured. (AR 31.) Petitioner timely requested review from the Appeals Council on or about April 14, 2016. (AR 4.) On June 9, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner filed this case. She contends that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 1 (Dkt. 1). Petitioner argues that the ALJ erred by failing to obtain updated medical expert testimony and by failing to give the opinions of treating provider Dr. De Silva proper weight. *See generally* Pet'r's Br. ISO Pet. for Review (Dkt. 15). Petitioner asks for reversal and a holding that she is disabled, or, in the alternative, that the case be remanded for a further hearing. Pet. for Review 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2009 through her date last insured of December 31, 2014. (AR 22.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe"

when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, through the date last insured, Petitioner had the following severe impairments: "deep vein thrombosis and pulmonary emboli with ongoing anticoagulant therapy; obesity; tremors secondary to medication; mild asthma; and depression." (AR 22.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 23–24.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be

established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform light work as defined in 20 CFR 40.1567(b) except she can only stand or walk for 4 hours in an 8-hour workday, and she needs to be able to shift positions from sitting, standing, or walking approximately every 2 hours. She can frequently handle and finger, occasionally reach overhead, occasionally climb stairs and ramps, balance, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds. She should have no more than moderate exposure to extreme temperatures, wetness, fumes, odors, dusts, gases, and poor ventilation, and no exposure to hazards. She can understand, remember, and carry out simple routine, repetitive tasks and instructions. She is able to maintain attention, concentration, and a production pace for 2-hour intervals between regularly scheduled breaks for a 40-hour workweek. She should have no production rate (defined as fast paced assembly line type work); no interaction with the public; and should deal with things rather than people.

(AR 24.) The ALJ further found that Petitioner was unable to perform any of her past relevant work through the date last insured. (AR 29.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner's RFC is compatible with work as an "Office helper," "Mail clerk," and "Small parts assembler." (AR 30–31.) The ALJ further found that these jobs exist in significant numbers in the national economy. (*Id.*)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "was not under a disability, as defined in the Social Security Act, at any time from September 1, 2009, the alleged onset date, through December 31, 2014, the date last insured." (AR 31.)

**B.     Analysis**

Petitioner raises two issues with the ALJ's decision. First, she argues the ALJ erred by failing to obtain updated medical expert testimony regarding whether the Petitioner's mental impairments are medically equal to a listed impairment. Second, she argues the ALJ erred by failing to give proper weight to the opinions of treating provider Dr. De Silva. *See generally* Pet'r's Br. ISO Pet. for Review (Dkt. 15). Each argument will be addressed in turn.

   **1.    The ALJ Was Not Required to Obtain Updated Medical Expert Testimony.**

At Petitioner's first hearing before the ALJ in this matter, impartial medical expert Dr. Thomas McKnight testified as follows:

> I have no idea what to do with this. There's 16 years or 26 years' worth of records that are not even here. 16 years from Dr. De Silva; there's a summary that he's put in here that says she has essentially intractable bipolar disorder for which innumerable medications have been tried; multiple sessions of lipo convulsive therapy, none of which has been an official but, in the record I have, there's not even a cursory mini-mental status examination that looks at this. She's taking a preposterous amount of medication; at least eight that cause dizziness and light-headedness; five that cause difficulty with concentration and impaired thinking and impaired judgment; five that can cause irregular heart rhythm; one combination, it causes weight gain and fatigue. In fact, that's the most common side effect of taking temazepam and [inaudible] together. Some of the medication she's taking is actually contraindicated because taking medication A reduces the effectiveness of medication B and there's some – there is at least one combination where taking either drug reduces the effectiveness of the other one. It's just a terrible record. I don't know what to do with it. There's nothing in the record that supports the diagnosis and I'm not saying it's incorrect; I'm saying there's nothing here, not even a cursory, mini-mental status examination. Now, there may be some that have been done over the years but it's not in the record that I have.

(AR 64–65.) In light of this testimony, the ALJ asked Petitioner's counsel to supplement the case file with additional records from Dr. De Silva. (AR 65.) Thereafter, 14 additional records were entered into the case file (AR 1306–1721), many of which were by Dr. De Silva. (AR 1356–1604). A second hearing was then held, during which the ALJ said she had obtained and reviewed these additional medical records. (AR 41.) The ALJ did not hear testimony from an impartial medical expert during this second hearing.

Petitioner contends that it was reversible error for the ALJ not to obtain updated medical expert testimony at the second hearing. Pet'r's Br. ISO Pet. for Review 5–7 (Dkt. 15). She relies on SSR 96-6p, a policy interpretation of the Social Security Act.[3] As relevant here, SSR 96-6p provides that:

> an administrative law judge … must obtain an updated medical opinion from a medical expert … [w]hen additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

1996 WL 374180 pp. 3–4.

Petitioner argues that the ALJ was required to call a medical expert at her second hearing because there was new and material evidence which had not been reviewed by the State agency physicians. Pet'r's Br. ISO Pet. for Review 7 (Dkt. 15).

Petitioner's argument is not well-taken. The requirement that the ALJ "must obtain an updated medical opinion" applies only *when* "additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any

---

[3] Although SSR 96-6p was rescinded and replaced by SSR 17-2p on March 27, 2017, SSR 96-6p applies in this case because Petitioner's claim was filed prior to that date. 2017 WL 3928306.

impairment in the Listing of Impairments." The ALJ concluded that the threshold referenced above was not present in the record, saying specifically that "[m]ost importantly, there are no objective findings in [Dr. De Silva's] records or the medical evidence of record to support" the level of impairment Dr. De Silva opined. (AR 29.) To support this statement, the ALJ cited to one of Dr. De Silva's records that was produced after the first and before the second hearing. (*Id.*)

Petitioner does not identify any record evidence refuting the ALJ's assessment regarding the lack of objective findings in Dr. De Silva's records. The fact that the ALJ found no objective evidence supporting Dr. De Silva's opinion demonstrates her belief that the additional records would not change the consultants' findings on this issue. Thus, SSR 96-6p did not require the ALJ to obtain updated medical expert testimony and it was not reversible legal error for the ALJ not to obtain such testimony.

Petitioner also argues that the ALJ was required to call a medical expert by the Hearings, Appeals, Litigation, and Law Manual, also known as the HALLEX. Pet'r's Br. ISO Pet. for Review 7–8 (Dkt. 15). Petitioner asserts that HALLEX I-2-6-70(A)(note 3) states that an ALJ "is encouraged to consult with [a medical expert] when he or she must make an inference about the onset of disability." 1993 WL 751901.

HALLEX does, indeed, "encourage" consultation by the ALJ with a medical expert when inferences about disability onset are part of the decision facing the ALJ. But encouragement is not a requirement under the law, and HALLEX does not identify its discussion of the subject as anything other than, just that, an encouragement. Hence, it was not error for the ALJ to *not* consult with a medical expert on these facts. Additionally, the circumstances implicated in this HALLEX section are not found in this record. Here, the ALJ found that Petitioner was not

disabled; hence, there was no need to for the ALJ to "make an inference about the onset of disability."

In summary, Petitioner has not shown that reversal or remand is required because the ALJ did not obtain updated medical testimony at the second hearing.

**2. The ALJ Did Not Err in Evaluating Dr. De Silva's Opinion.**

Petitioner contends the ALJ improperly discounted the opinion of the treating psychiatrist, Dr. De Silva. Pet'r's Br. ISO Pet. for Review 8–9 (Dkt. 15). She asserts that the ALJ failed to credit Dr. De Silva as "not only a specialist, but a MD psychiatrist." *Id.* at 8. She also asserts the ALJ erred in discounting Dr. De Silva's records and treatment of Petitioner because the medical visits were conducted via Skype or telephone. *Id.* at 9.

The ALJ's decision addresses Dr. De Silva's treatment and records:

> In April 2014, the claimant's mental health treatment provider, K. Himasiri De Silva, M.D., wrote a letter stating that he treated the claimant until June 2009, when [the claimant] left California, and he continued to do phone appointments with her and prescribe medications. He stated her diagnosis was bipolar disorder, type II severe, and she was treatment resistant because she had failed to respond to dozens of different medications. He reported the claimant had significant difficulty with every day functioning. He opined the claimant's symptoms were of a severity to meet the criteria for listing 12.04. Exhibit 20F. This opinion is given little weight because there appears to be absolutely no psychological exams in Dr. De Silva's records since 2009 – no mental status exams, no testing, and no documentation of any 'observed' signs or symptoms. Additionally, as noted by the claimant and her attorney at first hearing, her interaction with Dr. De Silva, who continued to prescribe huge amounts of meds for her, was almost exclusively telephonically between Idaho and California. Moreover, it does not reflect well on Dr. De Silva that he would continue to prescribe huge amounts of drugs to a patient he saw physically only 1 or 2 times per year. Most importantly, there are no objective findings in his records or the medical evidence of record to support this level of impairment.

(AR 28–29.) The ALJ also stated "In January 2014, it was noted [Dr. De Silva] still had the claimant on high doses of five medications and she was still feeling depressed." (AR 26.)

Petitioner relies on 20 C.F.R. § 404.1527(c)(5), which states that "[w]e generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." She alleges that the ALJ failed to recognize that Dr. De Silva was a psychiatrist with at least a 16-year treatment history, but she does not support this allegation with record evidence. The ALJ's decision expressly acknowledges that Dr. De Silva is an M.D. (AR 28.) Moreover, while referring to the testimony of medical expert R. Thomas McKnight, Ph.D., the ALJ stated that "the claimant had seen Dr. De Silva for 16 years." (*Id.*) Nor does Petitioner persuasively argue how the ALJ's decision would have been different had she given greater weight to the records and opinions of Dr. De Silva.

Applicable regulations provide that more weight is generally given to medical opinions of treating providers, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). Regardless of the relationship of the medical source to the claimant, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). In this case, Dr. De Silva's records did not provide a "detailed, longitudinal picture" and were not well-supported by medical signs and laboratory findings. Therefore, such records were not entitled to more weight.

An ALJ must state "clear and convincing reasons that are supported by substantial evidence" to reject an uncontradicted opinion of a treating physician. *Trevizo v. Berryhill*, 871

F.3d 664, 675 (9th Cir. 2017). To reject a contradicted opinion of a treating physician, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, Dr. De Silva opined that Petitioner meets the criteria for Listing 12.04 for Affective Disorders. (AR 989.) This opinion is contradicted by Dr. McKnight, an independent medical expert who testified that the record contained no objective clinical findings to support such a diagnosis. (AR 64–65.) Dr. De Silva's opinion is also contradicted by State agency reviewing psychological consultant Michael Dennis, Ph.D., who opined that Petitioner had only non-severe depression and mild functional limitations. (AR 105–106.) Thus, the ALJ needed to provide specific and legitimate reasons to reject Dr. De Silva's opinion. The ALJ did so by pointing to the lack of objective medical evidence supporting that opinion. (AR 28.) The Court is persuaded that this satisfied the ALJ's obligation to provide a specific and legitimate reason to reject Dr. De Silva's opinion. Petitioner has, therefore, not shown that the ALJ erred in her treatment of Dr. De Silva's opinion.

Petitioner also takes issue with the ALJ's remark that Dr. De Silva conducted appointments with Petitioner via Skype or telephone. Pet'r's Br. ISO Pet. for Review 9 (Dkt. 15). Because the ALJ properly rejected Dr. De Silva's opinion based on the lack of supporting objective medical evidence in the record, there is no basis for reversal even if the ALJ's remark was improper. However, the remark was not improper because there is nothing to indicate that the crux of the ALJ's concern was that such appointments were primarily telephonic. Rather, the ALJ's decision evidences concern that Dr. De Silva "continue[d] to prescribe huge amounts of drugs to a patient he saw physically only 1 or 2 times per year." (AR 28–29.) The number of medications Dr. De Silva prescribed – which impartial medical expert Dr. McKnight referred to as "preposterous" before highlighting numerous side effects and negative interactions among

them (AR 64) – was concerning, especially given that Dr. De Silva saw Petitioner in person only infrequently and therefore lacked opportunities to examine her more comprehensively. Petitioner has not shown the ALJ committed reversible legal error in remarking on the fact that Dr. De Silva frequently conducted telephonic appointments with Petitioner and only infrequently conducted appointments in person.

## IV. CONCLUSION

Petitioner has not shown that the ALJ committed reversible legal error by declining to obtain updated medical expert testimony at the second hearing or by discounting the opinion of Dr. De Silva. Accordingly, the ALJ's decision is affirmed.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: September 18, 2018

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge